UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Hydrogen Master Rights, Ltd., Carl Le Souef, and Pravansu Mohanty, Ph.D. | ) ) ) | Case No. |
| Plaintiffs, | ) ) | Judge |
| vs. | ) ) ) | Jury Demand Endorsed Hereon |
| Tracy Coats | ) ) | |
| Defendant. | ) | |

## Complaint

For their Complaint against Tracy Coats ("Coats"), plaintiffs Hydrogen Master Rights, Ltd. ("HMR"), Carl Le Souef ("Mr. Le Souef") and Pravansu Mohanty, Ph.D. ("Dr. Mohanty") state as follows:

## Introduction

1.     This action arises out of and relates to Coats' outrageous conspiracy with third party Dean Weston ("Weston") to extort Plaintiffs using confidential, proprietary and trade secret information that Coats disclosed to Weston for that purpose in violation of his contractual, promissory, fiduciary and other duties.

2.     Putting their conspiracy into action, Weston threatened Plaintiffs with federal criminal prosecution and imprisonment, involuntary disclosure of confidential and proprietary trade secret information, loss of United States citizenship, and other personal and professional harm and embarrassment unless they promptly paid him $9.4 million and assigned over to him ownership of valuable intellectual property including the Hydrogen Technology (defined below) that HMR had previously purchased in an arm's-

length transaction in 2011. Weston and Engineering Interests then attempted to legitimize their extortionate conduct by filing a baseless lawsuit in Michigan, which the court dismissed as improper.

3.      Plaintiffs accordingly bring this case against Coats for breach of contract (Count 1), breach of fiduciary duty (Count 2), promissory estoppel (Count 3), trade secret misappropriation (Count 4), invasion of privacy (Count 5), intentional infliction of emotional distress (Count 6), civil conspiracy (Count 7), and aiding and abetting (Count 8), and seek both legal and equitable relief.

## The Parties

4.      Hydrogen Master Rights, Ltd. ("HMR") is a Delaware corporation having a principal place of business in Michigan.

5.      Mr. Le Souef resides in, and is a citizen of, Australia.

6.      Dr. Mohanty resides in Michigan.

7.      Upon information and belief, Coats is an individual who previously resided in Ohio and presently resides in Pennsylvania.

8.      Mr. Le Souef and Dr. Mohanty bring this action on behalf of themselves as individuals and on behalf of the Partnership (defined below).

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Coats pursuant consistent with Ohio's long-arm statute and the requirements of due process based on his continuous and systematic minimum contacts in and with Ohio. Coats resided, was domiciled and was otherwise present in Ohio when events alleged herein occurred and Plaintiffs' claims arise from Coats' transacting business in Ohio.

11.     Coats resided, was domiciled and was otherwise present in Ohio when he initiated his dealings that led to his partnership with Mr. Le Souef and Dr. Mohanty, when he entered into the Partnership, and when he promised and agreed to maintain information now at issue as confidential.

12.     Coats also transacted significant Partnership business in Ohio pursuant to his contractual and fiduciary duties at issue in this action. The business Coats has transacted in Ohio includes: in-person meeting(s) with his partners; conducting regularly-scheduled confidential meetings with his partners from his Ohio residence using secure communication facilities; creating the recordings of confidential meetings with his partners that he provided to his co-conspirator Weston in breach of his contractual, promissory and fiduciary duties; inducing Weston to travel from Michigan to Ohio to discuss matters relating to HMR that are relevant to their conspiracy so he could record their conversation without Weston's consent, which otherwise may have been required under Michigan's two-party consent statute; and transacting other business for and on behalf of the Partnership such as negotiating and entering into contracts with third parties for products and services on the Partnership's behalf.

13.     Coats further has engaged in an overall persistent course of conduct in Ohio for more than five decades that continues to this day, including owning real and personal property, forming, operating and participating in multiple businesses in Ohio, registering and maintaining multiple limited-liability companies and limited partnerships with the Ohio Secretary of State, and frequently and regularly traveling to Ohio for both business and personal reasons.

14.     Venue is proper under 28 U.S.C. § 1391(b)(3) because each defendant is subject to the Court's personal jurisdiction with respect to this action.

**Statement of Facts**

**A.     The Partnership**

15.     Coats, Mr. Le Souef, Dr. Mohanty and third party Rodney Adler ("Mr. Adler") formed and entered into one or more partnerships (collectively, the "Partnership") for the purposes of, *inter alia,* acquiring and commercializing advanced technologies including a certain hydrogen-related technology (the "Hydrogen Technology").

16.     In forming the Partnership, Coats agreed and intended to share ownership and control of the Partnership's assets with his partners and to share in the Partnership's profits and losses.

17.     In forming the Partnership, and as a general partner, Coats acknowledged, both orally and in writing, that he held a position of trust with respect to his partners and promised to act in the best interests of the Partnership even if the Partnership's interests were different from his personal interests.

18.     Coats further promised and agreed, both orally and in writing, to maintain all information regarding the Partnership, including its technology, finances and deliberations, and his partners as confidential and recommended implementing specific measures to protect and maintain the confidentiality of that information.

19.     Plaintiffs reasonably relied on their special relationship with Coats and his acknowledgements, agreements and promises in disclosing confidential and proprietary information to him.

20.     Acting for and on behalf of the Partnership, Coats caused HMR to be incorporated in Delaware for the purpose of acquiring and holding the Hydrogen Technology on the Partnership's behalf.

21.     HMR purchased all rights, titles and interests in and to the Hydrogen Technology pursuant to the December 12, 2011 Agreement for Sale of Certain Assets (the "Purchase Agreement," which HMR incorporates herein by reference).

22.     The terms of the Purchase Agreement are confidential to HMR.

23.     Coats participated in regularly-scheduled and ad hoc meetings with his former partners using secure electronic communications systems from his home in Ohio and, upon information and belief, other locations, during which the partners discussed confidential, proprietary and trade secret matters including Partnership governance, ownership and control of Partnership assets, the finances of the Partnership and its assets (including HMR and the Hydrogen Technology), the status of ongoing research and development efforts, commercialization strategies, and other Partnership business.

24.     Coats recorded certain of his confidential conversations with his former partners (collectively with all copies, transcriptions, summaries, and other records thereof, the "Confidential Recordings").

25.     Coats created the Confidential Recordings subject to his fiduciary duties and promises to his former partners, and each Confidential Recording is the Partnership's property that Coats has held in trust for the Partnership's benefit. Coats has no right or interest in or to the Confidential Recordings separate from, or in addition to, the rights of the Partnership and his former partners.

26.     In or about June 2014, Coats withdrew and dissociated from the Partnership. In so doing, Coats divested any interest he may have had in and to HMR and other entities owned by or that relate to the Partnership.

27.     Effective as of June 27, 2014, Coats entered into a Mutual General Release and Indemnity (the "Mutual General Release") under which Coats agreed to release HMR and four other named entities, but not the Partnership, and certain related persons and entities from all claims, covenants, agreements, actions, liability, obligations and causes of action he may have had as of June 27, 2014.

28.     The Mutual General Release did not release any claims against Coats by the Partnership or his former partners or "any disputes, claims, controversies and causes of action arising out of or resulting from acts, omissions, or events occurring as a result of a breach of confidential information by [Coats] regarding [HMR]."

29.    The Mutual General Release did not terminate or otherwise limit Coats'
continuing fiduciary duties to the Partnership or his former partners with respect to
matters relating to or arising out of the Partnership.

**B.    Coats' Extortionate Conspiracy With Weston**

30.    Upon information and belief, Coats and Weston illegally, maliciously and
wrongfully entered into an agreement and conspiracy intending to, and for the illegal
purpose of, among other things, extorting Plaintiffs.

31.    Upon information and belief, Coats and Weston entered into their
agreement after June 27, 2014.

32.    As part of the conspiracy, Coats agreed to, and did, provide to Weston the
Partnership's and his former partners' confidential, proprietary and trade secret
information in breach of his duties and obligations to both the Partnership and to Dr.
Mohanty and Mr. Le Souef as his former partners.

33.    The confidential, proprietary and trade secret information Coats provided to
Weston included some or all of the Confidential Recordings, the existence of which Coats
had previously disclosed to Weston.

34.    Upon information and belief, Coats also disclosed to Weston private,
personal and sensitive information regarding Dr. Mohanty and Mr. Le Souef that they had
disclosed to Coats in confidence.

35.    Upon information and belief, Coats provided the Confidential Recordings
and private, personal and sensitive information to Weston knowing, and with Weston's
agreement that, he would use them in furtherance of their conspiracy.

36.     Coats did not request, nor did he receive, the consent of any of the Plaintiffs before disclosing the Confidential Recordings and other information to Weston, nor did Coats inform any of the Plaintiffs that he had disclosed the Confidential Recordings and other information to Weston.

37.     Putting his conspiracy with Coats into action, Weston contacted Dr. Mohanty on March 23, 2016, and asked him to meet to discuss an "urgent" matter.

38.     Dr. Mohanty agreed to meet Weston at a Starbucks in Novi, Michigan.

39.     When Dr. Mohanty arrived at the agreed-upon location, Weston insisted that they talk in Weston's vehicle instead of inside the Starbucks.

40.     With Dr. Mohanty in his vehicle, Weston claimed that the sellers under the Purchase Agreement had assigned him their rights under that agreement and that he already filed a lawsuit against HMR for breach of the Purchase Agreement when, in fact, he had filed no such lawsuit.

41.     Weston told Dr. Mohanty that, through his "research" on Dr. Mohanty, Mr. Le Souef and their business and personal interests, he had uncovered information that would be highly prejudicial if it was disclosed to federal law enforcement authorities and other third parties.

42.     Weston then had Dr. Mohanty listen to excerpts from the Confidential Recordings he had received from Coats and provided Dr. Mohanty with a written transcript of those excerpts.

43.     After playing the Confidential Recordings, Weston told Dr. Mohanty the recordings were evidence of felony criminal conduct and threatened to report Dr. Mohanty and Mr. Le Souef to federal law enforcement authorities.

44.     Weston further threatened that, if he were to disclose the Confidential Recordings, Dr. Mohanty and Mr. Le Souef would be convicted of federal criminal offenses and that Dr. Mohanty would have his United States citizenship revoked.

45.     To reinforce his threats, Weston boasted to Dr. Mohanty that he previously caused a third party to be criminally charged, convicted, and imprisoned based on information he discovered and then publicly revealed, and that the third party in question was still in prison.

46.     The Confidential Recordings that Weston played for Dr. Mohanty are unrelated to the Hydrogen Technology and do not evidence, disclose or suggest any illegal conduct by Dr. Mohanty or Mr. Le Souef.

47.     Weston also threatened to disclose to third parties private and secret information about Dr. Mohanty and Mr. Le Souef that, if disclosed, would professionally and personally harm, embarrass and otherwise materially prejudice each of them.

48.     Weston told Dr. Mohanty that the reason he wanted to meet in the privacy of his car was to give Dr. Mohanty the opportunity to avoid having criminal charges lodged against him and to otherwise prevent the Confidential Recordings and other prejudicial information from becoming public.

49.     Having threatened Dr. Mohanty and Mr. Le Souef with personal and professional embarrassment, criminal convictions, loss of citizenship and other egregious

harms, Weston offered to make it all "go away" if Dr. Mohanty, Mr. Le Souef and HMR agreed to (i) pay Weston $9.4 million, (ii) assign to him the Hydrogen Technology and related assets, and (iii) assign to him multiple unrelated patent-pending technologies.

50.    When Dr. Mohanty told Weston he did not have the means to pay him $9.4 million, Weston told him to sell assets or otherwise get the money from Mr. Le Souef.

51.    Weston concluded by telling Dr. Mohanty to relay his extortionate threats to Mr. Le Souef and further threatening that, unless his demands were quickly met, Dr. Mohanty and Mr. Le Souef would "get really hurt."

52.    Weston repeated his extortionate demands when he subsequently talked with Mr. Le Souef by telephone. During their call, Weston admitted to Mr. Le Souef that Coats provided him with copies of the Confidential Recordings pursuant to an agreement between them.

53.    Weston also claimed to know private and secret information about Mr. Le Souef regarding, for example, his family and personal life and his personal finances. Upon information and belief, Coats was one of Weston's sources for such information.

54.    Weston also repeated his demand for $9.4 million and assignment of the Hydrogen Technology and other, unrelated technologies as the price of keeping the Confidential Recordings and other private and secret information confidential.

55.     Weston also repeated his claim of having filed a lawsuit against HMR for breach of the Purchase Agreement when, in fact, he had not done so.

56.    When Weston and Mr. Le Souef met in person several days later, Weston repeated his extortionate demands for a third time.

57.     During their meeting, Weston threatened that, unless his demands were met, he would provide the Confidential Recordings to federal law enforcement authorities and other third parties, that he would begin subpoenaing third parties including federal agencies, and that, as a result of his threatened actions, "there will be a lot of tears."

58.     After his meeting with Mr. Le Souef concluded, Weston caused to be served on Mr. Le Souef a summons and complaint for a lawsuit he and Engineering Interests, LLC ("Engineering Interests"), a company that Weston owns and controls, had filed against Mr. Le Souef, Dr. Mohanty, HMR and other third parties in the Circuit Court for Oakland County, Michigan, on or about March 29, 2016 (the "Michigan Action").

59.     Upon information and belief, Weston's and Engineering Interests' purpose in filing the Michigan Action was not to pursue legitimate claims, but to further their conspiracy with Coats with the ulterior and improper purposes of attempting to legitimize and to further pursue their extortionate conduct.

60.     Weston's and Engineering Interests' ulterior and improper purposes are made manifest by their disclosure of confidential, proprietary and trade secret information in their complaint that was unnecessary for them to sufficiently state their claims for relief, and in so doing, breached Weston's contractual obligations to maintain such information as confidential.

61.     As a direct and proximate result of Coats' conduct as alleged herein, Plaintiffs have been damaged in an amount to be proven at trial. Without limiting the foregoing, Plaintiffs have lost business and financing opportunities, been deprived of the benefits of Coats' agreements with, and promises and duties owed to, them, and been denied the

value associated with their confidential, proprietary and trade secret information. Coats further has directly and proximately caused Plaintiffs to suffer significant economic and hedonic damages as a result of his invasions on their privacy and intentional infliction of emotional distress and his conspiracy with, and aiding and abetting of, Weston and Engineering Interests.

<u>**COUNT I**</u>
*Breach of Contract*

62.  Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

63.  Coats' promises to and agreements with Mr. Le Souef, Dr. Mohanty and the Partnership to maintain information regarding the Partnership and its assets confidential constitute valid contracts between Coats and each of Mr. Le Souef, Dr. Mohanty and the Partnership.

64.  Dr. Mohanty, Mr. Le Souef and the Partnership performed all of their obligations under their contracts with Coats regarding the confidentiality of the Partnership's information.

65.  Coats materially breached his contracts with Dr. Mohanty, Mr. Le Souef and the Partnership by, among other acts and omissions, engaging in the conduct alleged herein, including disclosing information regarding Plaintiffs, including information contained in the Confidential Recordings and information relating to the Partnership's assets, to Weston and, upon information and belief, to others.

66.     As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have suffered damages, both individually and on behalf of the Partnership, in an amount to be proven at trial.

67.     Moreover, Dr. Mohanty, Mr. Le Souef and the Partnership have suffered irreparable harm for which there is no adequate remedy at law, and will continue to suffer such harm unless this Court orders Coats to specifically perform his contractual duties and obligations.

<u>COUNT II</u>
*Breach of Fiduciary Duty*

68.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

69.     As a partner in the Partnership, Coats owed the Partnership and Dr. Mohanty and Mr. Le Souef as his partners fiduciary and other duties, including duties of loyalty, utmost good faith, and integrity.

70.     Upon their creation by Coats, each Confidential Recording constituted property of the Partnership, Coats was obligated to disclose its existence to the other partners in the Partnership, Coats was obligated to hold and maintain it in confidence for the benefit of the Partnership and his partners, and Coats possessed and held the Confidential Recordings in trust on behalf of the Partnership and his partners.

71.     Coats' fiduciary duties to the Partnership and Dr. Mohanty and Mr. Le Souef survived his withdrawal and dissociation from the Partnership with respect to matters arising and events occurring before his withdrawal and disassociation.

72.     Upon his withdrawal and dissociated from the Partnership, Coats had the obligation to account for and return all Partnership property, including the Confidential Recordings, which he failed to do in breach of his fiduciary duties.

73.     Coats breached and otherwise failed to observe his continuing fiduciary and other duties to the Partnership, Dr. Mohanty and Mr. Le Souef by, among other acts and omissions, engaging in the conduct alleged herein without informing or obtaining consent from the Partnership or his former partners, including using and additionally disclosing confidential and proprietary information regarding the Partnership, including the Confidential Recordings, to Weston and by providing the Confidential Recordings and other confidential, proprietary and trade secret information to Weston as part of their extortionate conspiracy.

74.     As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have suffered damages, both individually and on behalf of the Partnership, in an amount to be proven at trial.

75.     Moreover, Dr. Mohanty, Mr. Le Souef and the Partnership have suffered irreparable harm for which there is no adequate remedy at law, and will continue to suffer such harm unless this Court enjoins Coats from further breaching his fiduciary duties.

<u>C</u>OUNT <u>III</u>
*Promissory Estoppel*

76.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

77.     Among other things, Coats promised Dr. Mohanty, Mr. Le Souef and the Partnership that he would maintain information regarding the Partnership, including its technology, finances and deliberations, as confidential.

78.     When Coats made his promises, he expected to induce Dr. Mohanty, Mr. Le Souef and the Partnership to act or forbear from acting based on his promises.

79.     Dr. Mohanty, Mr. Le Souef and the Partnership reasonably relied on Coats' promises to their detriment by continuing their partnership with Coats and by disclosing confidential and proprietary information to him regarding the Partnership.

80.     Coats' promises are binding because injustice to Dr. Mohanty, Mr. Le Souef and the Partnership only can be avoided by enforcement of his promises.

81.     Since making them, Coats has broken his promises as alleged herein.

82.     As a direct and proximate result of the foregoing, Dr. Mohanty and Mr. Le Souef have suffered damages, both individually and on behalf of the Partnership, in an amount to be proven at trial.

83.     Moreover, Dr. Mohanty, Mr. Le Souef and the Partnership have suffered irreparable harm for which there is no adequate remedy at law, and will continue to suffer such harm unless this Court orders Coats to specifically perform his promises.

## COUNT IV
### *Trade Secret Misappropriation*

84.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

85.     Plaintiffs' confidential information and communications, including those comprising the Confidential Recordings, constitute protectable trade secrets.

{6545275:}                                                    15

86. Such information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.

87. Plaintiffs have taken reasonable measures under the circumstances to maintain the secrecy of this information. Plaintiffs' efforts include, but are not limited to, restricting access to the communications solely to the partners in the Partnership, conducting communications in private and using secure communications facilities, the fiduciary and other duties owed by partners in the Partnership to the Partnership and his partners, Coats' express promises to maintain the Partnership's confidential communications and other proprietary information as secret, the exclusion of disputes, claims, controversies and causes of action arising out of or resulting from acts, omissions or events occurring as a result of a breach of confidentiality from the Mutual General Release, the strict confidentiality provisions in the Purchase Agreement and the Mutual Cooperation Agreement requiring third parties to execute nondisclosure agreements, and implementing physical and electronic security measures.

88. As a partner in the Partnership, Coats had a confidential relationship with the Partnership and his partners, including Dr. Mohanty and Mr. Le Souef. Coats further promised and agreed to maintain information regarding the Partnership, including its technology, finances and deliberations, and his partners confidential.

89. Coats acquired knowledge of Plaintiffs' confidential and trade secret information in confidence subject to, and as a result of, his contractual, promissory, confidential and fiduciary relationship with the Partnership and his partners.

90.     Coats misappropriated Plaintiffs' trade secrets by, among other acts and omissions, using and disclosing the Confidential Recordings and other trade secrets as alleged herein without Plaintiffs' consent in violation of his duty to maintain their secrecy and limit their use.

91.     Coats' misappropriation has been willful and malicious.

92.     As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial.

93.     Moreover, Plaintiffs have suffered irreparable harm for which there is no adequate remedy at law, and will continue to suffer such harm unless this Court enjoins Coats from further misappropriating their trade secrets.

<u>COUNT V</u>
*Invasion of Privacy*

94.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

95.     Coats acquired private and secret information about Plaintiffs, including by making and retaining possession of the Confidential Recordings.

96.     Plaintiffs had a right to keep the subject matter of the information that Coats acquired and disclosed to Weston private.

97.     Coats invaded Dr. Mohanty's and Mr. Le Souef's privacy by obtaining their private and secret information through methods objectionable to a reasonable person, including by, among other things, recording conversations involving Dr. Mohanty and Mr. Le Souef without seeking or obtaining their consent, and by providing and otherwise publishing private and secret information to third parties including Weston.

{6545275:}                                        17

98.     As a direct and proximate result of the foregoing, a person of ordinary sensibilities would be outraged and would cause mental suffering, shame and humiliation, and Plaintiffs have suffered damages in an amount to be proven at trial.

<u>COUNT VI</u>
*Intentional Infliction of Emotional Distress*

99.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

100.     As set forth herein, Coats has engaged in extreme and outrageous behavior with respect to Plaintiffs, including but not limited to: creating and then disseminating and using the Confidential Recordings; extorting Plaintiffs by threatening to publicly disclose the Confidential Recordings and other confidential and proprietary information, pursue criminal prosecution and revocation of citizenship, and publicly disclose private and secret information concerning Plaintiffs; and conspiring to do the foregoing.

101.     Coats intentionally engaged in his extreme and outrageous behavior intending to cause emotional distress to Plaintiffs. Alternatively, Coats engaged in his outrageous behavior recklessly and without regard to the emotional distress that any reasonable person would know would result therefrom.

102.     Coats' behavior has gone beyond all possible bounds of decency in a manner that should be considered as utterly intolerable in a civilized society.

103.     As a direct and proximate result of the foregoing, Plaintiffs have suffered severe emotional distress that no reasonable person should be expected to endure, and have therefore been harmed in an amount to be proven at trial.

## COUNT VII
*Civil Conspiracy*

104.     Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

105.     Upon information and belief, Coats, Weston and Engineering Interests have maliciously worked together through concerted action, pursuant to a meeting of the minds among them, with the objective of causing Plaintiffs to pay them money and assign over to them other valuable assets to which they have no rightful claim or entitlement.

106.     In the course of their conspiracy, Coats, Weston and Engineering Interests engaged in unlawful acts, including invasion of privacy and intentional infliction of emotional distress, as alleged herein.

107.     Coats, Weston and Engineering Interests also conspired to extort Plaintiffs in violation of Michigan law. In particular, and without limiting the foregoing:

(a)     Weston and Engineering Interests illegally, maliciously and with aggravation threatened to accuse Plaintiffs of criminal offenses and to disclose their confidential, proprietary and trade secret information in furtherance of their conspiracy with Coats;

(b)     Weston and Engineering Interests illegally, maliciously and with aggravation threatened reputational and other injury in furtherance of their conspiracy with Coats;

(c)     Weston and Engineering Interests made their illegal, malicious and aggravated threats with the intent of extorting money and other pecuniary

advantages from Plaintiffs and to compel them to assign, or cause third parties to assign, assets to them against their will, causing them damages;

(d)     Weston's and Engineering's unlawful, malicious and aggravated threats in furtherance of their conspiracy with Coats are, by reason of their intended results, actionable; and,

(e)     Weston and Engineering Interests have caused Plaintiffs damages as a direct and proximate result of their extortionate conduct in furtherance of their conspiracy with Coats.

108.    Coats, Weston and Engineering Interests also conspired to engage in abuse of process in violation of Michigan law. In particular, and without limiting the foregoing:

(a)     Weston and Engineering Interests filed the Michigan Action in furtherance of their conspiracy with Coats for the ulterior and improper purposes of trying to legitimize Weston's extortionate conduct and to further their extortion of Plaintiffs;

(b)     Weston and Engineering Interests engaged in irregular acts in the use of process, including their disclosure of confidential, proprietary and trade secret information regarding the Hydrogen Technology and the Purchase Agreement in their complaint and other filings in violation of contractual and other obligations to maintain that information in strict confidence that was unnecessary for them to sufficiently state their claims for relief, and have subsequently failed to take adequate measures to ensure and preserve that information in confidence;

(c)     Weston and Engineering Interests thus took advantage of an otherwise proper legal procedure, namely the filing and prosecution of a civil action, for a purpose collateral to the intended use of that procedure, namely to legitimize and further their conspiracy to extort Plaintiffs; and,

(d)     Weston and Engineering Interests have caused Plaintiffs damages as a direct and proximate result of their abuses of process in furtherance of their conspiracy with Coats.

109.    Coats, Weston and Engineering Interests have worked together with specific intent to harm Plaintiffs, and their joint conduct and concerted action has harmed and injured Plaintiffs.

110.    Coats, Weston, and Engineering Interests have illegally, maliciously and with aggravation participated in a civil conspiracy against Plaintiffs, which renders Coats liable as if he had committed all of the wrongful acts and omissions himself.

111.    As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial.

<u>COUNT VIII</u>
*Aiding and Abetting*

112.    Plaintiffs incorporate by reference all allegations in all preceding and subsequent paragraphs of this Complaint as if fully rewritten herein.

113.    Coats knowingly and intentionally aided and abetted Weston and Engineering Interests in committing wrongful acts and omissions against Plaintiffs by providing them with substantial assistance, means, and encouragement to carry out their acts and omissions.

114.    Coats and Engineering Interests aided and abetted Weston and Engineering Interests with full knowledge of their ultimate acts and omissions and their tortious character, and with intent that the acts and omissions would harm Plaintiffs.

115.    The wrongful acts by Weston and Engineering Interests that Coats aided and abetted include invasion of privacy, intentional infliction of emotional distress, extortion and abuse of process, as alleged herein.

116.    By aiding and abetting Weston's and Engineering Interests' wrongdoing, Coats is liable as if he had committed all of the wrongful acts and omissions itself.

117.    As a direct and proximate result of the foregoing, Plaintiffs have suffered damages in an amount to be proven at trial.

### **Prayer for Relief**

WHEREFORE, plaintiffs pray for judgment against Coats as follows:

(A)    Compensatory damages in an amount to be determined at trial.

(B)    An accounting and disgorgement of each Coats ill-gotten profits.

(C)    A constructive trust in favor of Dr. Mohanty, Mr. Le Souef, the Partnership and HMR on all property and other value obtained and retained by Coats.

(D)    Exemplary, enhanced and punitive damages.

(E)    Attorneys' fees.

(F)    Pre-judgment and post-judgment interest.

(G)    Costs of this action.

(H)    Preliminary and permanent injunctive relief.

(I)    An order compelling Coats to deliver to Plaintiffs all copies of the Confidential Recordings and portions thereof and all other property of the Partnership in his possession, custody or control, including all materials comprising, memorializing, summarizing, paraphrasing, reflecting, or otherwise embodying the Confidential Recordings or any portion thereof.

(J)    An order that Coats and his agents, servants, employees, attorneys, representatives, successors and assigns, and all persons, firms, and corporations in active concert or participation with them, be enjoined and be restrained, both preliminarily and permanently, from:

(1)    disclosing, threatening to disclose, or using for any purpose the Confidential Recordings and any other information arising out of, relating to, or disclosed to him by HMR, the Partnership, Dr. Mohanty or Mr. Le Souef;

(2)    disclosing, threatening to disclose, or using Dr. Mohanty's, Mr. Le Souef's, HMR's or the Partnership's trade secrets;

(3)    disclosing, threatening to disclose, or using any private or secret information regarding Dr. Mohanty or Mr. Le Souef; and

(4)    failing to specifically perform his promises and agreements to maintain information regarding the Partnership, including its technology, finances and deliberations, confidential.

(K)    Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

Respectfully submitted,

Dated: January 20, 2017

/s/ David T. Movius

David T. Movius (0070132)
*dmovius@mcdonaldhopkins.com*
Matthew J. Cavanagh (0079522)
*mcavanagh@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 | f 216.348.5474

*Attorneys for Hydrogen*
*Master Rights, Ltd., Pravansu*
*Mohanty, Ph.D., Carl Le Souef,*
*and the Le Souef/Mohanty Partnership*

## **Jury Demand**

Hydrogen Master Rights, Ltd., Pravansu Mohanty, Ph.D., Carl Le Souef and the Le Souef/Mohanty Partnership hereby demand a jury trial on all matters triable thereby.


Respectfully submitted,

Dated: January 20, 2017

 /s/ David T. Movius
David T. Movius (0070132)
 dmovius@mcdonaldhopkins.com
Matthew J. Cavanagh (0079522)
 mcavanagh@mcdonaldhopkins.com
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

*Attorneys for Hydrogen
Master Rights, Ltd., Pravansu
Mohanty, Ph.D., Carl Le Souef,
and the Le Souef/Mohanty Partnership*